UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:12-CR-76-TLS |
| | ) | |
| BRANDON A. PETERS | ) | |

## OPINION AND ORDER

The Defendant, Brandon A. Peters, pled guilty to Count 1 of an Indictment, robbery of a controlled substance, in violation of 18 U.S.C. § 2118(a) and (c), and to Count 2, use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). An officer with the United States Probation Office prepared a Presentence Investigation Report (PSR) in anticipation of the Defendant's sentencing. This matter is before the Court on the Defendant's Brief in Support of Variance Pursuant to 18 U.S.C. § 3553(a) [ECF No. 60], filed on May 23, 2014, in which the Defendant seeks a variance from the sentencing guidelines. In its Sentencing Brief [ECF No. 61], filed on June 24, 2014, the Government asks the Court to deny the Defendant's request for a variance. The Defendant filed a Reply [ECF No. 63] on July 10, 2014. The Defendant's request for a downward variance is ripe for ruling.

## BACKGROUND

The Defendant and the Government agree as to the sentencing guidelines calculation pursuant to the PSR in this case. The PSR establishes an offense level of 20 and criminal history category of I for the Defendant, resulting in a guideline calculation of 33 to 41 months of imprisonment for the robbery count (Count 1), and 7 years of imprisonment, to run consecutive to Count 1, for the gun count (Count 2). The guidelines also call for 2 to 5 years of supervised

1

release for each count, a fine of $12,500 to $75,000, restitution in the amount of $3,817, and a special assessment of $100 for each count. The Defendant requests to be sentenced to a term of imprisonment of 7 years. He faces a mandatory minimum sentence of 7 years pursuant to 18 U.S.C. § 924(c) for Count 2. Thus, the Defendant's variance request is that the Court not assign any term of imprisonment for Count 1, the robbery count. The Defendant argues that the nature and circumstances of the offense, and the history and characteristics of the defendant, justify the requested variance. The Government opposes any such variance, arguing that the Defendant should serve a term of imprisonment on the robbery count.

## FINDINGS OF FACT

Facts relevant to sentencing should be proved by a preponderance of the evidence. *United States v. England*, 555 F.3d 616, 622 (7th Cir. 2009); *see also United States v. Krieger*, 628 F.3d 857, 862 (7th Cir. 2010) (advising that sentencing factors that do not increase the defendant's sentence beyond the statutory range may be found by the court at sentencing by a preponderance of the evidence). "A proposition proved by a preponderance of the evidence is one that has been shown to be more likely than not." *United States v. Davis*, 682 F.3d 596, 612 (7th Cir. 2012). The Federal Rules of Evidence do not apply to sentencing, *United States v. Dean*, 414 F.3d 725, 730 (7th Cir. 2005), and a court may rely on hearsay as long as the information "has sufficient indicia of reliability to support its probable accuracy." *United States v. Rollins*, 544 F.3d 820, 838 (7th Cir. 2008) (quotation marks omitted); *see also United States v. Isom*, 635 F.3d 904, 908 (7th Cir. 2011) ("At sentencing, courts may rely on presentence reports containing even double-hearsay, i.e., statements by coconspirators to investigators, so long as those statements are reliable."). At sentencing, "a district judge 'may appropriately conduct an inquiry broad in scope,

largely unlimited either as to the kind of information he may consider, or the source from which it may come.'" *United States v. Bautista*, 532 F.3d 667, 672 (7th Cir. 2008) (quoting *United States v. Johnson*, 489 F.3d 794, 796–97 (7th Cir. 2008)). "Sentencing judges necessarily have 'discretion to draw conclusions about the testimony given and evidence introduced at sentencing,' but 'due process requires that sentencing determinations be based on reliable evidence, not speculation or unfounded allegations.'" *United States v. Bradley*, 628 F.3d 394, 400 (7th Cir. 2010) (quoting *England*, 555 F.3d at 622). "A district court may rely on facts asserted in the PSR if the PSR is based on sufficiently reliable information." *Rollins*, 544 F.3d at 838. "The defendant bears the burden of proving that the PSR is inaccurate or unreliable," and if he offers no evidence to question the PSR's accuracy, the court may rely on it. *Id.*

On March 13, 2014, the Court held an evidentiary hearing in which the following facts were determined. The Defendant grew up in the small town of Salado, Texas. His mother is an attorney and his step father is a physician, and he appears to have had a comfortable upbringing. He was gifted mathematically and demonstrated a good work ethic in numerous part-time jobs he had while in high school. He was also active in sports, particularly football, which he played in junior high and high school. The Defendant suffered numerous knee injuries while playing football, one described as particularly gruesome, and had undergone seven knee surgeries by the age of 22. The Defendant has an extensive medical history treating these injuries and has seen numerous physicians to treat chronic knee pain.

In August of 2011, the Defendant began treatment with Dr. Duran Michael Ready, a pain management specialist, to address his knee pain. Dr. Ready diagnosed the Defendant as suffering from opioid-induced hyperalgesia, and prescribed the medication Suboxone for treatment. Based on the testimony offered by Dr. Ready and the Defendant during the evidentiary hearing, the

Defendant appeared to have enjoyed some relief while using Suboxone.

The Defendant attended Texas Christian University (TCU) from 2006 to 2011 and majored in Physics.[1] He began working for Fort Worth Towers (FWT), L.L.C., a custom steel manufacturer, in November 2011, and proved to be a promising employee. In July 2012, the Defendant was promoted to assistant production manager and transferred to the FWT plant in Hicksville, Ohio. That same month the Defendant and his wife moved to Fort Wayne, Indiana. The Hicksville plant is a large facility, occupying approximately 100 acres, 10 of which are under roof. The size of the facility required the Defendant to walk approximately 6 to 8 miles per day, resulting in knee pain and discomfort.

Due to the Defendant's work transfer and resulting move from Texas to Indiana, Dr. Ready was no longer able to be his treating physician. The Defendant was last prescribed Suboxone from Dr. Ready at the end of May 2012, which Dr. Ready estimated would last until approximately July 31, 2012. On September 12, 2012, the Defendant saw Dr. Thomas in Fort Wayne, Indiana, who prescribed morphine tablets for pain management. Although Dr. Ready instructed the Defendant that he could have his new physician contact him regarding his previous treatment, the record shows that the Defendant did not tell Dr. Thomas about his recent stability on Suboxone under Dr. Ready and that Dr. Thomas did not contact Dr. Ready. The Defendant testified that he answered direct questions but did not volunteer information in his visit with Dr. Thomas. Dr. Thomas prescribed 60 tablets of morphine for the Defendant on his September 12 visit, and by September 22, ten days later, the Defendant had used all 60 tablets.

---

[1] The Defendant advised that he graduated and received his degree from TCU in May 2011, although he does not have a diploma because of an outstanding bill. The PSR indicates that he earned 138 credit hours, qualifying him as a senior, but that he was removed from the graduation list and that university records do not show that he received his bachelor's degree.

The Defendant continued to experience pain and borrowed pain medication from a family member during a trip to Chicago that weekend before returning to work on Monday, September 24, 2012. That evening, the Defendant went to the emergency room at Parkview North where he was provided with a shot of pain medication and a prescription for pain pills. However, the pharmacy cancelled the prescription upon discovery that the Defendant had filled a morphine prescription within the previous 12 or 13 days.

At approximately 8:11 AM on September 25, 2012, the Defendant entered the CVS Pharmacy on St. Joe Center Road in Fort Wayne, Indiana. When waited upon by the pharmacist, the Defendant pulled a gun from his waistband and pointed it at the pharmacist, demanding Opana. The pharmacist gave him several bottles of Opana and the Defendant left the store at about 8:14 AM. An officer with the Fort Wayne Police Department spotted the Defendant's speeding truck, which matched the vehicle description from the CVS robbery, and activated his emergency lights in an attempt to pull over the Defendant. Rather than stop, the Defendant led officers on a high speed chase topping speeds of over 100 miles per hour passing approximately 40 vehicles, two school buses, and numerous horse-drawn carriages. Tire-deflation devices were utilized and the Defendant lost a front tire about halfway through the chase. When traffic clogged the roadway, he proceeded off road in his attempt to evade capture. After about 15 minutes and 30 seconds, the Defendant stopped and was apprehended by the police.

On December 13, 2013, the Defendant pled guilty to both counts of the Indictment without the benefit of a plea agreement. His criminal history includes only one incident, occurring on the Defendant's twenty-first birthday while at TCU. The Defendant was drunk, had kicked a fence, and was arrested by TCU police. The Defendant pled guilty to criminal mischief, with deferred prosecution, and successfully completed the requirements of his deferral.

5

## ANALYSIS

When sentencing a defendant, the district court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a)." *Nelson v. United States*, 555 U.S. 350, 351 (2009); *see also United States v. Panice*, 598 F.3d 426, 441 (7th Cir. 2010) (setting forth the two-step process that a sentencing court must engage in to determine a defendant's sentence); *United States v. Bush*, 523 F.3d 727, 729 (7th Cir. 2008) (same). Here, the primary issue involves the second step, the application of the criteria set forth in § 3553(a) to the facts and circumstances of the Defendant's particular case. In imposing a sentence, § 3553(a) requires a court to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.
>
> (3) the kinds of sentences available;
>
> (4) the advisory guideline range;
>
> (5) any pertinent policy statements issued by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities; and
>
> (7) the need to provide restitution to any victims of the offense.

6

18 U.S.C. § 3553(a).

After considering these factors, a court must impose a sentence that is sufficient, but not greater than necessary, to satisfy the following purposes of sentencing: just punishment, respect for the law, deterrence, protection of the public, and rehabilitation of the defendant. In making this determination, a district court may not presume that the guideline sentence is the correct one. *Nelson*, 555 U.S. at 352; *Rita v. United States*, 551 U.S. 338, 351 (2007). When evaluating the Guidelines recommendation, a court may consider whether the Sentencing Commission fulfilled its "characteristic institutional role" in adopting the particular guideline, *see Kimbrough v. United States*, 552 U.S. 85, 109 (2007), and the court may reject any guideline on policy grounds, *United States v. Pape*, 601 F.3d 743, 749 (7th Cir. 2010). Ultimately, a court must make an independent determination, taking into account the types of sentences available, the other relevant § 3553(a) factors, and the arguments of the parties. *See Gall v. United States*, 552 U.S. 38, 49–50 (2007).

The Defendant argues that he is significantly less culpable than other defendants due to the inappropriate medical care he received from Dr. Thomas. He contends that he was seeking pain relief and not euphoria like other addicts, and that this crime would not have occurred but for the medical mismanagement that caused him to believe he had no other choice but to rob the pharmacy for pain medication. The Defendant argues that he has accepted full responsibility, that he is a low risk of recidivism, and that 7 years of imprisonment is a sufficient sentence in light of the history and characteristics of the defendant and the nature and circumstances of this offense.

The Government argues that the Defendant made a series of irresponsible decisions over many months in addressing his own pain management and that it is improper to assign all blame

7

for his actions to any alleged mismanagement by Dr. Thomas. The Government contends that the Defendant was knowledgeable of many avenues and opportunities he had for seeking help to deal with his addiction. The Government argues that the Defendant knew his actions were wrong, but that he chose to commit the armed robbery regardless. Despite the fact that the gun was unloaded, the Government contends that the victim of the robbery would not know that, and that the high speed chase endangered additional lives. The Government agrees that the Defendant is unlike other drug addicts, and argues he had a better background and support system than most addicts, which made him more capable of making the right decision rather than committing a violent crime. From the Government's perspective, violent crime has a profound effect on both victims and the community, requiring serious consequences to deter other potential violent offenders. The Government argues that the Defendant repeatedly failed to exercise personal responsibility and that the Defendant's request for a variance in which he receives no term of imprisonment for the robbery count should be denied.

The Court has carefully considered the lengthy and detailed arguments presented by each side in this case. The crux of the Defendant's arguments for why he should receive a variance hinges upon the treatment of the Defendant by Dr. Thomas. The Defendant contends that this offense is the direct result of the medical malpractice he alleges Dr. Thomas committed in his pain management treatment, essentially laying all blame at the feet of Dr. Thomas. Whether the Defendant's actions were a direct result of alleged negligence is a separate issue that may be raised in a separate cause of action. The Court declines to address the actions of any third-party, for only the actions of the Defendant are necessary to determine his culpability in the offense.

While the Defendant's position is that he should not take any blame for his actions, which were merely a desperate attempt for survival from pain, the Court finds undisputed facts in the

record to the contrary. For months the Defendant failed to take action with respect to his addiction problems, despite numerous opportunities and avenues he might have pursued to seek help. Although he had the opportunity to be forthcoming to his doctor about his concerns, the Defendant testified that he only answered direct questions and didn't volunteer information to Dr. Thomas, despite having recently achieved stability and success with his prescription of Suboxone. The Defendant testified that he had a generalized fear of pain clinics and was afraid to discuss his concerns with Dr. Thomas, but it does not then correlate that his only alternative was to rob a pharmacy at gunpoint. He could have reached out to his mother, a former nurse and current attorney working in the healthcare field, who could have advised him on medications or finding another doctor. He could have called numerous other friends and relatives, who testified on his behalf, during the months and even hours before the robbery to seek help. He was home with his wife during the hours before the robbery, whom undoubtedly would have come to his aid, or he could even have returned to the emergency room.

The Defendant must face responsibility for both his actions, and his inaction, during the months leading up to the robbery. The record reflects that the Defendant has an extensive medical history related to his knee injuries and pain, having seen numerous physicians and tried many medications over many years. He was an experienced patient and was knowledgeable of his course of treatment and the effects and benefits of many medications. If his treatment was not working, he had a duty to society to do more and try other alternatives before resorting to the commission of the violent offense in this case.

Armed robbery is a serious offense. It is of no consequence that the gun was not loaded, suggesting the Defendant did not wish to hurt anyone. The victims of the armed robbery would not know that, and it does little to mitigate the trauma and fear suffered by the victims.

Furthermore, the nature and circumstances surrounding the high speed chase endangered many more lives in the community. The Defendant contends that a sentence of 7 years sufficiently deters the illegal conduct in this case. However, to sentence the Defendant to only 7 years, the statutory minimum for Count 2, means that the Defendant would not receive any term of imprisonment for the robbery count. This will not do. The Defendant must serve time for committing the violent offense in this case.

The Court acknowledges the strides the Defendant has made since his incarceration. He has been eager to address his medical issues and drug usage. He appears motivated to get his life back on track and to never return to the criminal justice system. He has taken it upon himself to help his fellow inmates by teaching and tutoring them in their GED courses. He has a limited criminal history and solid work experience. He enjoys the support of numerous friends and family members who are committed to helping him get his life back together. His experience in jail appears to have had a strong deterrent effect, reducing the Defendant's risk of recidivism. These are all good things. But in the end, the Defendant must serve a term of imprisonment for the crimes in which he pled guilty. The Court cannot justify a defendant receiving no term of imprisonment for the commission of the violent offense of robbery, especially when the Defendant had numerous opportunities to seek help but instead made the bad decisions that have brought him before the Court.

Therefore, the Court finds that, based on the nature and circumstances of the offense, and the history and characteristics of the defendant, as well as all of the purposes of punishment—including the need to provide just punishment for the offense, to impose a sentence that reflects the seriousness of the offense and that promotes respect for the law, to adequately deter future criminal conduct, to protect the public from future crimes of the defendant, and to avoid

unwarranted disparity in sentencing—the Court finds that a sentence of 16 months of imprisonment for Count 1, and 7 years of imprisonment for Count 2, to run consecutively to Count 1, is sufficient, but not greater than necessary, to comply with the purposes of punishment.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendant's request for a 18 U.S.C. § 3553(a) variance and finds that a sentence of 16 months as to Count 1, and 7 years as to Count 2, to run consecutively to Count 1, is sufficient but not greater than necessary to meet the purposes of sentencing in this case and is consistent with the statute. The Sentencing set for Friday, October 31, 2014, at 1:30 PM is CONFIRMED.

SO ORDERED on October 22, 2014.

                                                                          s/ Theresa L. Springmann
                                                                          THERESA L. SPRINGMANN
                                                                          UNITED STATES DISTRICT COURT